## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

**TRIPPE MANUFACTURING CO.,**
**An Illinois Corporation,**

             Plaintiff,

    v.

**MONSTER, LLC,**
**A Nevada Company,**

             Defendant.

Civil Action No. _____

JURY TRIAL DEMANDED

```
FILED: AUGUST 29, 2008
08CV4951
JUDGE GUZMAN
MAGISTRATE JUDGE MASON
EDA
```

### COMPLAINT

Plaintiff Trippe Manufacturing Company ("Trippe") brings this complaint against

Defendant Monster, LLC ("Monster"), and states as follows:

### <u>NATURE OF THE ACTION</u>

1.  This is an action for a declaration that Trippe has not infringed, and is not infringing,

U.S. Patent No. 6,456,091 ("the '091 patent") (attached hereto as Exhibit 1), U.S. Design Patent

Nos. 446,504 ("the D '504 patent") (attached hereto as Exhibit 2), and 446,189 ("the D '189

patent") (attached hereto as Exhibit 3), the trademark POWERBAR and corresponding U.S.

Trademark Registration No. 2,647,550 ("the '550 registration") (attached hereto as Exhibit 4);

that the '091 patent, D '504 patent and D '189 patent are invalid; that the '550 registration is

invalid and should be canceled; that the '091 patent is unenforceable; and that Trippe has not

violated Section 43(a) of the Lanham Act by its design and marketing of surge suppressor and

power conditioner products.

## PARTIES

2.    Trippe Manufacturing Company is an Illinois corporation having its principal place of business at 1111 W. 35th St., Chicago, IL 60609.

3.    Monster, LLC is a limited liability corporation existing under the laws of Nevada, with its principal place of business at 7251 Lake Mead Boulevard West, Las Vegas, Nevada, 89128.  On information and belief, Monster, LLC has two managing members: a) Noel Lee and b) Monster Cable Products Inc. ("Monster Cable").

## JURISDICTION AND VENUE

4.    This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, Federal Rule of Civil Procedure 57, the Trademark Laws of the United States, 15 U.S.C. § 1051 *et seq.* ("the Lanham Act")*,* and the Patent Laws of the United States, 35 U.S.C, § 1 *et seq.*

5.    This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. §§ 1331, 1332, 1367(a), 1338 and 2201, as well as 15 U.S.C. § 1121(a).

6.    Supplemental jurisdiction of this Court exists for the state law claims stated herein, each of which arise out of a common nucleus of operative facts with those from which the federal claims arise.

7.    This Court has personal jurisdiction over defendant Monster based upon its substantial, continuous and systematic contacts with this judicial district, including, on information and belief, its regular business contacts with the forum, including substantial sales of its products in packaging bearing the Monster name, substantial revenue generated from those sales and an interactive website, and its efforts including, correspondence to enforce the '091 patent, the D '504 patent, the D '189 patent, the '550 registration, and Lanham Act claims against Trippe, a known resident of this forum.

8.   Monster markets and sells products, including its surge suppressors and power line conditioners, to various retailers in this district, including Circuit City and Best Buy, who in turn sell Monster products to residents of this district.

9.   Monster also markets and sells its products to residents of this district through various websites, including www.monstermints.com, www.monstermusic.com, www.beatsbydre.com, www.monsterpower.com and www.monstercable.com.  Residents of this district may search these Monster websites for information about Monster's products, including those products Monster contends are covered by the patents, trademark and trade dress in suit, including the Pro 1000 and 2000, HTS 2000, HTS 2600 MKII, and various "Powerbar" products.  Residents of this district may also search these websites for retailers in this district that sell the Monster products promoted on the websites.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred here and pursuant to 28 U.S.C. § 1391(c) for the same reasons that Monster is subject to personal jurisdiction.

## BACKGROUND

11. Between 2005 and November 28, 2007, Monster Cable Products, Inc. ("Monster Cable") and Monster, through their counsel, sent several letters to Trippe asserting infringement of the '091, D'189 and D'504 patents and trade dress.  The parties discussed these claims but were unable to resolve their dispute.

12. On November 28, 2007, Monster Cable filed suit against Trippe in the Eastern District of Texas, Case No. 9:07-cv-286 ("Texas case"), even though neither party had offices in Texas.  Monster Cable alleged that Trippe infringed the '091 patent, the D '504 patent, the D '189 patent and misappropriated a trade dress relating to surge suppressor and power line

conditioner products.  Trippe filed an Answer denying the material allegations and asserted

Counterclaims.

13. On August 7, 2008, the court in the Texas case held a scheduling hearing at which

Monster Cable's counsel stated that Monster Cable would amend its complaint to include a claim

alleging that Trippe infringes the trademark "POWERBAR."  Monster Cable has not yet

amended its complaint to include this claim.

14. Upon information and belief, Monster – not Monster Cable Products, Inc. – owns all

rights and interest in the patents and trade dress at issue in the Texas case and the patents,

trademark and trade dress in this case.  Attached as Exhibits 5 and 6 are copies of assignments

executed by Monster Cable assigning its entire interest in the patents and the trademark in suit to

Monster.  Because Monster Cable does not own the patents or trade dress, Monster Cable lacks

standing in the Texas case.

15. An actual case or controversy exists between Monster and Trippe regarding the

intellectual property rights in this case because Monster is controlled by Monster Cable and Noel

Lee, the President of Monster Cable and Chief Executive Officer and Managing Member of

Monster LLC.  As a result, Trippe is concerned that it faces the same claims of liability from

Monster as those asserted or threatened by Monster Cable in the Texas case.

## STATEMENT OF CLAIMS

### COUNT I

**NON-INFRINGEMENT,
INVALIDITY AND UNENFORCEABILITY
OF U.S. PATENT NO. 6,456,091**

16. Trippe realleges and incorporates herein by reference the allegations each and every

allegation contained in the foregoing paragraphs 1-15 as though fully set forth herein.

17. United States Patent No. 6,456,091 ("the '091 patent") entitled "Power Line Conditioner with Voltage and Current Amplitude Tracking" was issued by the United States Patent and Trademark Office on September 24, 2002 as the result of Patent Application No. 09/755,946 ("the '946 application") filed on January 5, 2001.  The '091 patent names Kendrew Lee and Noel Lee as co-inventors.

18. Trippe has not directly, contributorily, by inducement, or otherwise infringed any valid claim of the '091 patent, nor is Trippe directly, contributorily, by inducement, or otherwise infringing any valid claim of the '091 patent.

19. The claims of the '091 patent are invalid for failing to satisfy one or more of the conditions of patentability set forth in Title 35, United States Code, including §§ 102, 103, and 112 thereof.

20. The '091 patent is unenforceable due to inequitable conduct committed before the U.S. Patent and Trademark Office ("the Patent Office") during the prosecution of the '946 application for the reasons stated below.

21. On December 31, 1996, the Patent Office issued U.S. Patent No. 5,589,718 entitled "Power Line Conditioner" ("the '718 patent").

22. The '718 patent names Noel Lee as a sole inventor and was issued more than one year prior to the filing of the patent application that resulted in the '091 patent.

23. Upon information and belief, the individual "Noel Lee" named as an inventor in the '718 patent is the same individual "Noel Lee" named as a co-inventor in the '091 patent

24. The '718 patent states, among other things, that"[a]lthough not shown in the drawings, the front panel of the housing could be provided with various indication devices such as an LED status bar or the like."  '718 patent at col. 2: 59-61.

25. On August 7, 2001, the U.S. Patent and Trademark Office issued U.S. Patent No. D446,189, entitled "Power Strip" ("the D '189 patent").

26. The D '189 patent issued as the result of a patent application filed on January 4, 2001, and names Kendrew Lee as a sole inventor.

27. Upon information and belief, the individual "Kendrew Lee" named as an inventor in the D '189 patent is the same individual "Kendrew Lee" named as a co-inventor in the '091 patent.

28. The D '189 patent illustrates, among other things, a plurality of status-indicating LEDs.  See, Figs. 1 and 2.

29. On November 13, 2001, the U.S. Patent and Trademark Office issued U.S. Patent No. 6,315,604, entitled "Power Center Assembly Having Electrical Connection-Protection and Optional Detachable Surface Mount" (" the '604 patent").

30. The '604 patent issued as the result of a patent application filed on September 28, 2000, and names Kendrew Lee as a sole inventor.

31. Upon information and belief, the individual "Kendrew Lee" named as an inventor in the '604 patent is the same individual "Kendrew Lee" named as a co-inventor in the '091 patent.

32. The '604 patent states, among other things, that"[t]he hood member 10 may have . . . at least one opening . . . for accommodating at least one power strip indication feature selected from a group of . . . an audible alarm 11, an on/off button 12, a ground indicator 13, a current indicator (wiring fault) 14, and a surge protection indicator 15."  ('604 patent at col. 3: 27-33).

33. The '604 patent claims, among other things, a power center having a power strip that comprises: an audible alarm, an on/off button, a ground indicator, a current indicator, and other features.  ('604 patent at col. 6: 4-13).

34. Upon information and belief, the '091 patent, the '718 patent, the D '189 patent, and the '604 patent are all owned by Monster.

35. Upon information and belief, Monster or its predecessors in interest (through its patent attorney, one or both of the co-inventors of the '091 patent, Kendrew Lee and Noel Lee, or a combination of the same) was aware of the existence of the '718 patent, the D '189 patent, and the '604 patent before the filing of the '946 application that led to the '091 patent.

36. The '091 patent asserts, among other things, that "related-art [devices] do not conveniently inform [or indicate to] the user of high, low, marginal, or out-of-tolerance power conditions that would be detrimental to the coupled electronic equipment. . . . Therefore[,] a need exists for a power line conditioner which provides both surge and noise protection and monitoring [and indication] of non-surge out-of-tolerance power conditions." ('091 patent at col. 1: 23-33.

37. Monster or its predecessors in interest committed acts and omissions and exercised a pattern or practice of conduct during the prosecution of the '091 patent in the Patent Office, which violated the duty of candor owed by patent applicants, including the inventors Kendrew Lee and Noel Lee, with the intent to deceive the Patent Office and its agents into issuing patent claims of a scope beyond which Monster and its predecessors were entitled. This conduct included intentionally withholding material information from the Patent Office, including the '718 patent, the D '189 patent, and the '604 patent and the corresponding patent applications from which they issued (the "Lee References"), and possibly other material information.

38. The claims of the '091 patent include numerous elements related to monitoring and indicating operational status of a power strip and the voltage provided and current drawn by the apparatus outlets, including but not limited to the following claim elements:

at least one light indicator means for indicating a power supply status selected from a group of power status conditions consisting essentially of "power on," "ground OK," "clean power on," and "wiring correct;"

at least one voltage range circuit means for determining and indicating an input voltage amplitude;

and at least one current range circuit means for determining and indicating an input current amplitude.

Claim 1 of the '091 patent (emphasis added).

39. Each of the Lee References teaches the use of monitoring and indicating devices in a power strip or similar device. Because, among other things, such features are claimed in the '091 patent, the teachings of the Lee References are material to the patentability of the claims of the '091 patent under 35 U.S.C § 102, 35 U.S.C § 103, or both.

40. During the prosecution of the '946 application, Monster or its predecessors asserted that the cited prior art did not teach or suggest "a need . . . for monitoring and display" of the "operational status of the device plus the voltage provided and current drawn by the apparatus outlets," Amendment dated April 24, 2002, page 17, while having full knowledge that the Lee References taught monitoring and displaying of various parameters in power strips and device status.

41. Upon information and belief, Monster, its predecessors, its patent attorney, or one or both of the co-inventors deliberately failed to disclose the existence of one or more of the Lee References to the Patent Office, even though these references teach or suggest elements of the claims of the '091 patent, including, but not limited to the claim set forth in paragraph 22.

42. In contradiction to statements made by Monster or its predecessors in the '091 patent indicating that the related art did not inform users of out-of-tolerance power conditions, Monster's own '604 patent describes and claims a power strip that informs users of out-of-tolerance power conditions by providing, among other things, a ground indicator, a current

indicator, a surge protection indicator, and a clean power indicator.  Upon information and belief, Monster, its predecessors, its patent attorney, or one or both of the co-inventors deliberately failed to disclose the existence of one or more of the Lee References despite their relevance and materiality to patentability.

43. Monster, its predecessors, its patent attorney, or one or both of the co-inventors have demonstrated an intent to deceive the Patent Office and inequitable conduct by their failure to disclose the Lee References, patents which name common inventors as the '091 patent, which are owned by Monster, which relate to the same subject matter of the '091 patent, and which explicitly teach among other things, a ground indicator, a current indicator, and a surge protection indicator, as well as the desirability of having a number of status-indicating LEDs.

## COUNT II

### NON-INFRINGEMENT AND
### INVALIDITY OF U.S. DESIGN PATENT 446,504

44. Trippe realleges and incorporates herein by reference each and every allegation contained in the foregoing paragraphs 1-15 as though fully set forth herein.

45. United States Design Patent No. D 446,504 ("the D '504 patent") was issued by the United States Patent and Trademark Office on August 14, 2001.

46. Trippe has not directly, contributorily, by inducement, or otherwise infringed any valid claim of the D '504 patent, nor is Trippe directly, contributorily, by inducement, or otherwise infringing any valid claim of the D '504 patent.

47. The D '504 patent is invalid for failing to satisfy one or more of the conditions of patentability set forth in Title 35, United States Code, including §§ 102, 103 and 171 thereof.

## COUNT III

### NON-INFRINGEMENT AND
### INVALIDITY OF U.S. DESIGN PATENT 446,189

9

48. Trippe realleges and incorporates herein by reference each and every allegation contained in the foregoing paragraphs 1-15 as though fully set forth herein.

49. United States Design Patent No. 446,189 ("the D '189 patent") was issued by the United States Patent and Trademark Office on August 7, 2001.

50. Trippe has not directly, contributorily, by inducement, or otherwise infringed any valid claim of the D '189 patent, nor is Trippe directly, contributorily, by inducement, or otherwise infringing any valid claim of the D '189 patent.

51. The D '189 patent is invalid for failing to satisfy one or more of the conditions of patentability set forth in Title 35, United States Code, including §§ 102, 103 and 171 thereof.

## COUNT IV

### NON-INFRINGEMENT AND INVALIDITY OF TRADE DRESS

52. Trippe realleges and incorporates herein by reference each and every allegation contained in the foregoing paragraphs 1-15 as though fully set forth herein.

53. Monster claims to offer distinctive goods well known to customers interested in high performance audio/video and power technology. Monster further claims that the design of Monster's surge suppressor and power conditioning product line has become recognized in the industry as symbols uniquely associated with Monster. Monster also claims that Trippe has misappropriated Monster's trade dress, falsely represented the origin of Trippe's products, and is likely to cause confusion in the marketplace, by creating alleged copies of Monster's products, in violation of section 43(a) of the Lanham Act.

54. Monster's asserted trade dress is functional.

55. Monster's asserted trade dress is generic.

56. Monster's asserted trade dress lacks any secondary meaning.

57. There is no actual or likely confusion in the marketplace as to source, sponsorship, affiliation or authorization of Monster's products.

58. Trippe has not in any way acted in a manner that constitutes a false designation of origin, a false or misleading description of fact, or a false or misleading representation of fact which is likely to cause confusion as to the source of Plaintiff's products.

<u>**COUNT IV**</u>

**NON-INFRINGEMENT AND INVALIDITY OF THE "POWERBAR" TRADEMARK**

59. Trippe realleges and incorporates herein by reference each and every allegation contained in the foregoing paragraphs 1-15 as though fully set forth herein.

60. U.S. Trademark Registration No. 2,647,550 is on the Supplemental Register and purports to cover the alleged mark POWERBAR for a "multiple outlet electrical power strip" and is owned by Monster.

61. Trippe has not infringed and does not infringe any alleged rights in Monster's '550 registration, nor does Trippe infringe any alleged trademark rights that Monster has in the mark "POWERBAR," under the common law or otherwise.

62. The only product Trippe sells that Monster could possible assert to infringe the alleged POWERBAR trademark is Trippe's HTPOWERBAR 10 product.  But Trippe's use of the term "HTPOWERBAR10" is a fair descriptive use and is not likely to cause confusion, or to cause mistake and to deceive, as to the affiliation, connection, or association of Trippe with Monster (or vice-versa) or as to the origin, sponsorship and approval of Trippe's products by Monster.

63. Monster's "POWERBAR" trademark is merely descriptive or generic and therefore, invalid. Monster's United States Trademark Registration No. 2,647,550 should be cancelled because it is invalid.

## PRAYER FOR RELIEF

WHEREFORE, Trippe respectfully requests:

A.     That the Court enter a declaratory judgment that Trippe is not infringing, has not infringed, has not contributed to the infringement of, nor induced others to infringe any claim of the '091 patent, the D '504 patent or the D '189 patent;

B.     That the Court enter a declaratory judgment that the '091 patent, the D '504 patent and D '189 patent are invalid;

C.     That the Court enter a declaratory judgment that the '091 patent is unenforceable;

D.     That the Court enter a declaratory judgment that Trippe has not violated Section 43(a) of the Lanham Act.

E.     That the Court enter a declaratory judgment that Trippe does not infringe United States Trademark Registration No. 2,647,550, or any alleged trademark rights that Monster has in "POWERBAR," whether common law or otherwise,

F.     That the Court order the cancellation of United States Trademark Registration No. 2,647,550 pursuant to 15 U.S.C. § 1119;

G.     That the Court award Trippe its reasonable attorneys' fees, costs, and expenses in this action pursuant to 35 U.S.C. § 285 and all other applicable statutes, rules and common law; and

H.     That the Court grant Trippe such other further relief as it may deem just and proper.

## JURY DEMAND

Trippe hereby demands trial by jury on all issues so triable.

Dated: August 29, 2008                    Respectfully submitted,

                                          s/ Larry L. Saret _____

                                          David L. De Bruin
                                          Shane A. Brunner
                                          Larry L. Saret
                                          **MICHAEL BEST & FRIEDRICH LLP**
                                          Two Prudential Plaza
                                          180 North Stetson Avenue
                                          Suite 2000
                                          Chicago, IL  60601-6710
                                          Phone  312.222.0800
                                          dldebruin@michaelbest.com
                                          sabrunner@michaelbest.com
                                          llsaret@michaelbest.com

                                          Attorneys for Trippe Manufacturing Company

US006456091B1

(12) **United States Patent**
Lee et al.

(10) **Patent No.:** **US 6,456,091 B1**
(45) **Date of Patent:** **Sep. 24, 2002**

(54) **POWER LINE CONDITIONER WITH VOLTAGE AND CURRENT AMPLITUDE TRACKING**

(75) Inventors: **Kendrew Lee**, Fremont; **Noel Lee**, Daley City, both of CA (US)

(73) Assignee: **Monster Cable Products, Inc.**, Brisbane, CA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 8 days.

(21) Appl. No.: **09/755,946**

(22) Filed: **Jan. 5, 2001**

(51) **Int. Cl.⁷** ............................................. **H01H 31/02**
(52) **U.S. Cl.** ...................................... **324/556**; 340/642
(58) **Field of Search** ................................. 324/555, 556, 324/508, 156, 115; 340/649, 642, 664, 815.45, 815.56, 815.67

(56) **References Cited**

U.S. PATENT DOCUMENTS

4,092,591 A * 5/1978 Lozowski ................... 324/115

| | | | | |
|---|---|---|---|---|
| 4,912,590 A | * | 3/1990 | Misencik | 361/56 |
| 5,339,017 A | * | 8/1994 | Yang | 340/636 |
| 5,583,413 A | * | 12/1996 | Proctor | 324/427 |
| 6,054,849 A | * | 4/2000 | Collier | 324/556 |
| 6,323,652 B1 | * | 11/2001 | Collier | 324/508 |

* cited by examiner

Primary Examiner—Christine Oda
(74) Attorney, Agent, or Firm—LaRiviere, Grubman & Payne, LLP

(57) **ABSTRACT**

An apparatus and a method using a power line conditioner having a conventional grounded plug disposed at one end of a short three-wire cord and a housing disposed at the opposite end for providing surge protection, voltage and current amplitude monitoring and indication, as well as visual indication of other singular conditions such as "power on," "adequate ground," etc., and outlets for receiving the connecting cord plugs of the electronic equipment to be protected.

**22 Claims, 5 Drawing Sheets**







Figure 4A



Figure 4B



Figure 4C



Figure 4D

US 6,456,091 B1

1

# POWER LINE CONDITIONER WITH VOLTAGE AND CURRENT AMPLITUDE TRACKING

## FIELD OF THE INVENTION

The present invention is related to power line devices for monitoring typical consumer-level voltage and current levels, and, more specifically, to multi-tap devices for coupling several electrically powered devices to a single outlet, for providing power line filtering and surge protection and visual indications of voltage, current and other parameters of interest to the consumer.

## BACKGROUND OF THE INVENTION

The advent of sensitive electronic devices in the consumer market has created a need to protect such devices from spurious and potentially damaging electrical spikes. Consumer electronics, such as computers and televisions and their associated peripherals, contain microcircuit electronics which are readily damaged by out-of-specification electrical power. Currently, multi-tap extension cords that plug into a single wall outlet allow more than one device to be plugged into the cord. Related-art cords are also provided with circuitry that protects the electrically-coupled peripheral devices from surges or spikes of high current or voltage. However, the related-art cords do not conveniently inform the user of high, low, marginal, or out-of-tolerance power conditions that would be detrimental to the coupled electronic equipment. Additionally, the related-art cords do not provide power line filtering. Therefore a need exists for a power line conditioner which provides both surge and noise protection and monitoring of non-surge out-of-tolerance power conditions.

## BRIEF SUMMARY OF THE INVENTION

The present invention apparatus and method comprises a power line conditioner having a conventional grounded plug disposed at one end of a short three-wire cord and a housing disposed at the opposite end for providing power line filtering and surge protection, voltage and current amplitude monitoring and indication, as well as visual indication of other singular conditions such as "power on," "adequate ground," etc., and outlets for receiving the connecting power plugs of the electronic equipment to be protected.

## BRIEF DESCRIPTION OF THE DRAWINGS

For a fuller understanding of the present invention, reference is made to the accompanying drawings in the following section entitled Detailed Description of the Invention and Best Mode of the invention. Reference numbers refer to the same or equivalent parts of the present invention throughout the several figures of the drawings.

FIG. 1 of one side of an exemplary model of the invention, in accordance with the present invention.

FIG. 2 a of an exemplary view of the invention, in accordance with the present invention.

FIG. 3 a view of the side opposite of FIG. 1 in the exemplary model, in accordance with the present invention.

FIG. 4 is a schematic of the present invention, in accordance with the present invention.

## DETAILED DESCRIPTION OF THE INVENTION AND BEST MODE OF THE INVENTION

The present invention apparatus and method comprises a power line conditioner having a conventional grounded plug

2

disposed at one end of a short three-wire cord and a housing disposed at the opposite end for providing power line filtering, surge protection, voltage and current amplitude monitoring and indication, as well as visual indication of other singular conditions such as "power on," "adequate ground," etc., and outlets for receiving the connecting cord plugs of the electronic equipment to be protected, hereinafter collectively referred to as "protected devices."

In a preferred embodiment, the present invention apparatus is a power line conditioner for protecting and monitoring power to a television system, such as found in the home. Referring to FIG. 1, one side of an exemplary model of the present invention power line conditioner 100 is shown which comprises a plurality of electrical outlets 1, each outlet 1 is of a conventional design for receiving two-prong or three-prong electrical plugs such as those found in televisions, video recorder/playback devices, television cable converter boxes, and the like. The plurality of outlets 1 may be of any number, but preferably between 4 and 12. Electrically coupled to the power line conditioner 100 is power cord 5 which is a three-wire electrical cord of sufficient gauge for carrying the current for which the power line conditioner 100 is rated and in compliance with electrical codes. By example, the plurality of outlets 1 may supply unswitched high power voltages, unswitched digital voltages, and switched analog voltages (See FIG. 4). A plug of grounded design (not shown) for connecting power line conditioner 100 to a power source is disposed at the end of cord 5.

Referring to FIG. 2, the top of power line conditioner 100 is shown. A first group of four light emitting diode (LED) indicators is disposed at one end of the power line conditioner 100. A first indicator 10 indicates a "power on" condition and is colored green, although white or another non-alarming color may be used. A second indicator 11 indicates a "ground ok" condition and may also be preferably colored green. A third indicator 12 indicates "clean power on" condition and may be colored blue. The "clean power on" indicator 12 also shows that the filter circuit (i.e., the circuit which filters/reduces the noise in the AC source from a wall AC outlet) is functioning. A fourth indicator 13 indicates a "wiring correct" condition. The indicators 12, 13 also may be preferably colored green to indicate acceptable status, but another, non-alarming color may also be used. Alternatively, indicator 13 may be colored red to indicate the power plug has been incorrectly coupled. In this embodiment, indicator 13 alerts the user to a potential hazard because the LINE wire and the NEUTRAL wire have been reversely or incorrectly wired in the AC wall outlet.

A second group of LED indicators 15 indicates the status of the voltage being supplied to the power line conditioner 100. A first LED 16 indicates 90 volts or less, and is colored red. A second LED 17 indicates 100 volts or less and is also colored red. The red colors visually alert the user that the voltage is too low and that the protected devices should not be "turned on." A third LED 18 indicates 110 volts or less and a fourth LED 19 indicates 120 volts or less. Both are preferably colored green to visually inform the user that the voltage is acceptable and the protected devices may be "turned on." A fifth LED 20 indicates that the output voltage is 130 volts or less and is colored yellow to visually indicate a marginal condition. The sixth LED 21 indicates 140 volts or more and is colored red to visually indicate that the conditions are not safe for "turning on" the peripheral devices.

A third group of LED indicators 25 indicates the status of the current collectively supplied by the power line condi-

US 6,456,091 B1

3

tioner **100** to the protected devices. A first indicator **26** indicates 0.5 amp, the second indicator **27** indicates 1 amp, the third indicator **28** indicates 2 amps, and the fourth indicator **29** indicates 4 amps. These four indicators are preferably colored green. Other current values could be indicated if desired. The fifth indicator **30** indicates 12 amps and is preferably colored yellow to visually indicate that power line conditioner **100** is nearing its rated limit. The sixth indicator **31** indicates 15 amps or any other maximum value for which power line conditioner **100** is rated. This indicator **31** is colored red to visually indicate that no additional protected device should be "turned on."

Referring now to FIGS. **2** and **3**, a coaxial connector group **35** is shown. The present invention contemplates and is compatible with the use of three connectors: a cable connector **36**, a satellite connector **37**, and an antenna connector **38**, but additional coaxial connectors could also be provided. The power line conditioner **100** also provides surge protection/suppression to input from a wall cable outlet (CATV), a satellite dish (SAT), or an antenna (ANTENNA) while maintaining minimum signal loss.

Although specific colors, numbers of LEDs, and specific voltage and current values have been described, the inventor fully understands and contemplates that fewer or more LED indicators or different indicator colors or values may be used without departing from the spirit of the invention. Additionally, information about the meaning of each LED indicator could be embossed, labeled, or imprinted in some manner on the housing of power line conditioner **100** adjacent to each indicator. Further, the preferred embodiment housing is contemplated to have an elongate form as indicated by the figures, but other shapes may be utilized.

Referring now to FIG. **4**, the electrical circuitry contemplated for providing surge protection and monitoring current and voltage values is illustrated. In an alternative embodiment, the power line conditioner **100** may further comprise voltage and current amplitude tracking for electronic devices such as computers and their peripherals. In this embodiment, the coaxial group **35** could be deleted without detracting from the basic teaching of the present invention. Information as herein shown and described in detail is fully capable of attaining the above-described object of the invention, the presently preferred embodiment of the invention, and is, thus, representative of the subject matter which is broadly contemplated by the present invention. The scope of the present invention fully encompasses other embodiments which may become obvious to those skilled in the art, and is to be limited, accordingly, by nothing other than the appended claims, wherein reference to an element in the singular is not intended to mean "one and only one" unless explicitly so stated, but rather "one or more." All structural and functional equivalents to the elements of the above-described preferred embodiment and additional embodiments that are known to those of ordinary skill in the art are hereby expressly incorporated by reference and are intended to be encompassed by the present claims. Moreover, no requirement exists for a device or method to address each and every problem sought to be resolved by the present invention, for such to be encompassed by the present claims. Furthermore, no element, component, or method step in the present disclosure is intended to be dedicated to the public regardless of whether the element, component, or method step is explicitly recited in the claims. However, it should be readily apparent to those of ordinary skill in the art that various changes and modifications in form, semiconductor material, and fabrication material detail may be made without departing from the spirit and scope of the inventions

4

as set forth in the appended claims. No claim herein is to be construed under the provisions of 35 U.S.C. 112, sixth paragraph, unless the element is expressly recited using the phrase "means for."

What is claimed:

1. An electrical apparatus, said apparatus comprising:

an electrical cord having a plug for continuously receiving electrical power from an external power source;

at least one power line filtering means;

at least one power outlet having power surge protection for distributing said filtered power to at least one peripheral device;

at least one light indicator means for indicating a power supply status selected from a group of power status conditions consisting essentially of "power on," "ground OK," "clean power on," and "wiring correct;"

at least one voltage range circuit means for determining and indicating an input voltage amplitude; and

at least one current range circuit means for determining and indicating an input current amplitude.

2. The apparatus, as recited in claim **1**, wherein the at least one power outlet may supply a voltage selected from a group of voltages consisting essentially of an unswitched high power voltage, an unswitched digital voltage, and a switched analog voltage.

3. The apparatus, as recited in claim **1**, further comprising at least one coaxial connector circuit means for providing surge protection and suppression from spurious voltages emanating from an external signal source.

4. The apparatus, as recited in claim **3**, wherein said at least one coaxial connector circuit means is selected from a group of connectors consisting essentially of a cable connector, a satellite connector, and an antenna connector.

5. The apparatus, as recited in claim **1**, wherein said at least one light indicator means comprises a first group of light emitting diode (LED) indicators, said first LED indicator group comprising:

said first LED indicator displaying a "power on" condition;

said second LED indicator displaying a "ground OK" condition;

said third LED indicator displaying a "clean power on" condition; and

said fourth LED indicator displaying a "wiring correct" condition.

6. The apparatus, as recited in claim **1**, wherein said at least one voltage range circuit means comprises a second group of light emitting diode (LED) indicators, said second LED indicator group comprising:

said first LED indicator warning of voltage in a range of 90 volts or less;

said second LED indicator warning of voltage in a range of 100 volts or less;

said third LED indicator warning of voltage in a range of 110 volts or less;

said fourth LED indicator warning of voltage in a range of 120 volts or less;

said fifth LED indicator warning of an output voltage in a range of 130 volts or less; and

said sixth LED indicator warning of voltage in a range of 140 volts or more.

7. The apparatus, as recited in claim **1**, wherein said at least one current range circuit means comprises a third group of light emitting diode (LED) indicators, said third LED indicator group comprising:

US 6,456,091 B1

said first LED indicator warning of current in a range of greater than 0.5 ampere;

said second LED indicator warning of current in a range of greater than 1 ampere;

said third LED indicator warning of current in a range of greater than 2 amperes;

said fourth LED indicator warning of current in a range of greater than 4 amperes;

said fifth LED indicator warning of current in a range of greater than 12 amperes; and

said sixth LED indicator warning of current in a range of greater than 15 amperes.

**8.** The apparatus, as recited in claim **5,** wherein the at least one power outlet may supply a voltage selected from a group of voltages consisting essentially of an unswitched high power voltage, an unswitched digital voltage, and a switched analog voltage.

**9.** The apparatus, as recited in claim **5,** further comprising at least one coaxial connector circuit means for providing surge protection and suppression for spurious voltages emanating from an external signal source.

**10.** The apparatus, as recited in claim **9,** wherein said at least one coaxial connector circuit means is selected from a group of connectors consisting essentially of a cable connector, a satellite connector, and an antenna connector.

**11.** An electrical apparatus, said apparatus comprising:

an electrical cord having a plug for continuously receiving electrical power from an external power source;

at least one power line filtering means;

at least one power outlet having power surge protection for distributing said filtered power to at least one peripheral device;

at least one light indicator means for indicating a power supply status selected from a group of power status conditions consisting essentially of "power on," "ground OK," "clean power on," and "wiring correct;"

at least one voltage range circuit means for determining and indicating an input voltage amplitude; and

at least one current range circuit means for determining and indicating an input current amplitude; and

at least one coaxial connector circuit means for providing surge protection and suppression for spurious voltages emanating from an external signal source,

wherein the at least one power outlet may supply a voltage selected from a group of voltages consisting essentially of an unswitched high power voltage, an unswitched digital voltage, and a switched analog voltage,

wherein said at least one coaxial connector circuit means is selected from a group of connectors consisting essentially of a cable connector, a satellite connector, and an antenna connector,

wherein said at least one light indicator means comprises a first group of light emitting diode (LED) indicators, said first LED indicator group comprising:

a first LED indicator displaying a "power on" condition,

a second LED indicator displaying a "ground OK" condition,

a third LED indicator displaying a "clean power on" condition, and

a fourth LED indicator displaying a "wiring correct" condition,

wherein said at least one voltage range circuit means comprises a second group of LED indicators, said second LED indicator group comprising:

a first LED indicator warning of voltage in a range of 90 volts or less,

a second LED indicator warning of voltage in a range of 100 volts or less,

a third LED indicator warning of voltage in a range of 110 volts or less,

a fourth LED indicator warning of voltage in a range of 120 volts or less,

a fifth LED indicator warning of an output voltage in a range of 130 volts or less, and

a sixth LED indicator warning of voltage in a range of 140 volts or more, and

wherein said at least one current range circuit means comprises a third group of LED indicators, said third LED indicator group comprising:

a first LED indicator warning of current in a range of greater than 0.5 ampere,

a second LED indicator warning of current in a range of greater than 1 ampere,

a third LED indicator warning of current in a range of greater than 2 amperes,

a fourth LED indicator warning of current in a range of greater than 4 amperes,

a fifth LED indicator warning of current in a range of greater than 12 amperes, and

a sixth LED indicator warning of current in a range of greater than 15 amperes.

**12.** A method for conditioning power, said method comprising:

providing an electrical cord having a plug for continuously receiving electrical power from an external power source;

providing at least one power line filtering means;

providing at least one power outlet having power surge protection for distributing said filtered power to at least one peripheral device;

providing at least one light indicator means for indicating a power supply status selected from a group of power status conditions consisting essentially of "power on," "ground OK," "clean power on," and "wiring correct;"

providing at least one voltage range circuit means for determining and indicating an input voltage amplitude; and

providing at least one current range circuit means for determining and indicating an input current amplitude.

**13.** The method, as recited in claim **12,** wherein the at least one power outlet may supply a voltage selected from a group of voltages consisting essentially of an unswitched high power voltage, an unswitched digital voltage, and a switched analog voltage.

**14.** The method, as recited in claim **12,** further comprising the step of providing at least one coaxial connector circuit means for providing surge protection and suppression from spurious voltages emanating from an external signal source.

**15.** The method, as recited in claim **14,** wherein said at least one coaxial connector circuit means is selected from a group of connectors consisting essentially of a cable connector, a satellite connector, and an antenna connector.

**16.** The method, as recited in claim **12,** wherein said at least one light indicator means comprises a first group of light emitting diode (LED) indicators, said first LED indicator group comprising:

said first LED indicator displaying a "power on" condition;

said second LED indicator displaying a "ground OK" condition;

7

said third LED indicator displaying a "clean power on" condition; and

said fourth LED indicator displaying a "wiring correct" condition.

**17.** The method, as recited in claim **12,** wherein said at least one voltage range circuit means comprises a second group of light emitting diode (LED) indicators, said second LED indicator group comprising:

said first LED indicator warning of voltage in a range of 90 volts or less;

said second LED indicator warning of voltage in a range of 100 volts or less;

said third LED indicator warning of voltage in a range of 110 volts or less;

said fourth LED indicator warning of voltage in a range of 120 volts or less;

said fifth LED indicator warning of an output voltage in a range of 130 volts or less; and

said sixth LED indicator warning of voltage in a range of 140 volts or more.

**18.** The method, as recited in claim **12,** wherein said at least one current range circuit means comprises a third group of light emitting diode (LED) indicators, said third LED indicator group comprising:

said first LED indicator warning of current in a range of greater than 0.5 ampere;

said second LED indicator warning of current in a range of greater than 1 ampere;

said third LED indicator warning of current in a range of greater than 2 amperes;

said fourth LED indicator warning of current in a range of greater than 4 amperes;

said fifth LED indicator warning of current in a range of greater than 12 amperes; and

said sixth LED indicator warning of current in a range of greater than 15 amperes.

**19.** The method, as recited in claim **14,** wherein the at least one power outlet may supply a voltage selected from a group of voltages consisting essentially of an unswitched high power voltage, an unswitched digital voltage, and a switched analog voltage.

**20.** The method, as recited in claim **13,** further comprising the step of providing at least one coaxial connector circuit means for providing surge protection and suppression from spurious voltages emanating from an external signal source.

**21.** The method, as recited in claim **20,** wherein said at least one coaxial connector circuit means is selected from a group of connectors consisting essentially of a cable connector, a satellite connector, and an antenna connector.

**22.** A method for conditioning power, said method comprising:

providing an electrical cord having a plug for continuously receiving electrical power from an external power source;

providing at least one power line filtering means;

providing at least one power outlet having power surge protection for distributing said filtered power to at least one peripheral device;

providing at least one light indicator means for indicating a power supply status selected from a group of power

8

status conditions consisting essentially of "power on," "ground OK," "clean power on," and "wiring correct;"

providing at least one voltage range circuit means for determining and indicating an input voltage amplitude;

providing at least one current range circuit means for determining and indicating an input current amplitude; and

providing at least one coaxial connector circuit means for providing surge protection and suppression from spurious voltages emanating from an external signal source,

wherein the at least one power outlet may supply a voltage selected from a group of voltages consisting essentially of an unswitched high power voltage, an unswitched digital voltage, and a switched analog voltage,

wherein said at least one coaxial connector circuit means is selected from a group of connectors consisting essentially of a cable connector, a satellite connector, and an antenna connector,

wherein said at least one light indicator means comprises a first group of light emitting diode (LED) indicators, said first LED indicator group comprising:

a first LED indicator displaying a "power on" condition,

a second LED indicator displaying a "ground OK" condition,

a third LED indicator displaying a "clean power on" condition, and

a fourth LED indicator displaying a "wiring correct" condition,

wherein said at least one voltage range circuit means comprises a second group of LED indicators, said second LED indicator group comprising:

a first LED indicator warning of voltage in a range of 90 volts or less,

a second LED indicator warning of voltage in a range of 100 volts or less,

a third LED indicator warning of voltage in a range of 110 volts or less,

a fourth LED indicator warning of voltage in a range of 120 volts or less,

a fifth LED indicator warning of an output voltage in a range of 130 volts or less, and

a sixth LED indicator warning of voltage in a range of 140 volts or more, and

wherein said at least one current range circuit means comprises a third group of LED indicators, said third LED indicator group comprising:

a first LED indicator warning of current in a range of greater than 0.5 ampere,

a second LED indicator warning of current in a range of greater than 1 ampere,

a third LED indicator warning of current in a range of greater than 2 amperes,

a fourth LED indicator warning of current in a range of greater than 4 amperes,

a fifth LED indicator warning of current in a range of greater than 12 amperes, and

a sixth LED indicator warning of current in a range of greater than 15 amperes.

* * * * *

US00D446504B1

(12) **United States Design Patent**  (10) Patent No.:  **US D446,504 S**

Lee  (45) Date of Patent:  ∗∗ **Aug. 14, 2001**

(54) **POWERLINE CONDITIONER**

(75) Inventor:  **Kendrew Lee**, Fremont, CA (US)

(73) Assignee:  **Monster Cable Products, Inc.,**
Brisbane, CA (US)

(∗∗) Term:  **14 Years**

(21) Appl. No.:  **29/135,115**

(22) Filed:  **Jan. 5, 2001**

(51) **LOC (7) Cl.** ........................................ **13-03**
(52) **U.S. Cl.** .................................... **D13/139.8**
(58) **Field of Search** ............... D13/139.2, 139.6–139.8;
439/107, 501, 502, 142, 650, 651, 652,
653, 654, 954

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| D. 306,012 | ∗ | 2/1990 | Oesterheld et al. | .............. | D13/139.8 |
| D. 370,458 | ∗ | 6/1996 | Fladung et al. | .................. | D13/139.8 |
| 5,899,761 | ∗ | 5/1999 | Crane et al. | ........................ | 429/142 |

∗ cited by examiner

*Primary Examiner*—Susan J. Lucas
*Assistant Examiner*—Jennifer Rivard
(74) *Attorney, Agent, or Firm*—LaRiviere, Grubman &
Payne, LLP

(57) **CLAIM**

The ornamental design for a powerline conditioner, as
shown and described.

**DESCRIPTION**

A portion of the disclosure of this patent document contains
material which is subject to copyright protection. The copy-
right owner has no objection to the facsimile reproduction
by anyone of the patent document or the patent disclosure,
as it appears in the U.S. Patent and Trademark Office patent
files or records, but reserves all copyright rights whatsoever.

FIG. **1** is a perspective view of a first embodiment of a
powerline conditioner, in accordance with the present inven-
tion.

FIG. **2** is a plan view of a first embodiment of a powerline
conditioner, in accordance with the present invention.

FIG. **3** is an underside view of a first embodiment of a
powerline conditioner, in accordance with the present inven-
tion.

FIG. **4** is a side view of a first embodiment of a powerline
conditioner, in accordance with the present invention.

FIG. **5** is a corresponding side view of a first embodiment of
a powerline conditioner, in accordance with the present
invention.

FIG. **6** is a rear view of a first embodiment of a powerline
conditioner, in accordance with the present invention.

FIG. **7** is a frontal view of a first embodiment of a powerline
conditioner, in accordance with the present invention.

FIG. **8** is a perspective view of a second embodiment of a
powerline conditioner, in accordance with the present inven-
tion.

FIG. **9** is a plan view of a second embodiment of a powerline
conditioner, in accordance with the present invention.

FIG. **10** is an underside view of a second embodiment of a
powerline conditioner, in accordance with the present inven-
tion.

FIG. **11** is a side view of a second embodiment of a
powerline conditioner, in accordance with the present inven-
tion.

FIG. **12** is a corresponding side view of a second embodi-
ment of a powerline conditioner, in accordance with the
present invention.

FIG. **13** is a rear view of a second embodiment of a
powerline conditioner, in accordance with the present inven-
tion; and,

FIG. **14** is a frontal view of a second embodiment of a
powerline conditioner, in accordance with the present inven-
tion.

**1 Claim, 6 Drawing Sheets**



Case 1:08-cv-04951     Document 1-3     Filed 08/29/2008     Page 2 of 7



**Figure  1**



Figure  2



Figure  3



Figure  4



Figure 5



Figure 6



Figure 7

Case 1:08-cv-04951     Document 1-3     Filed 08/29/2008     Page 5 of 7



**Figure  8**

**U.S. Patent**    Aug. 14, 2001    Sheet 5 of 6    US D446,504 S



Figure 9



Figure 10



Figure 11



Figure 12



Figure 13



Figure 14

US00D446189S

(12) **United States Design Patent**     (10) Patent No.:     **US D446,189 S**
Lee                                       (45) Date of Patent:   ** **Aug. 7, 2001**

(54) **POWER STRIP**

(75) Inventor: **Kendrew Lee**, Fremont, CA (US)

(73) Assignee: **Monster Cable Products, Inc.**,
Brisbane, CA (US)

(**) Term: **14 Years**

(21) Appl. No.: **29/135,105**

(22) Filed: **Jan. 4, 2001**

(51) **LOC (7) Cl.** ........................................ **13-03**
(52) **U.S. Cl.** ........................................ **D13/139.8**
(58) **Field of Search** ................ D13/139.6–139.8;
D8/359; 439/650, 651, 652, 653, 654, 954,
501, 502, 107, 142

(56)            **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D. 350,940 | * 9/1994 | Rossman et al. | ................ D13/139.8 |
| D. 400,175 | * 10/1998 | Okamoto | .......................... D13/139.7 |
| 6,179,665 | * 1/2001 | Rossman et al. | .................... 439/654 |

* cited by examiner

*Primary Examiner*—Susan J. Lucas
*Assistant Examiner*—Jennifer Rivard
(74) *Attorney, Agent, or Firm*—LaRiviere, Grubman &
Payne, LLP

(57)            CLAIM

The ornamental design for a power strip, as shown.

DESCRIPTION

A portion of the disclosure of this design patent document
contains material which is subject to copyright protection.
The copyright owner has no objection to the facsimile
reproduction by anyone of the patent document or the patent
disclosure, as it appears in the U.S. Patent and Trademark
Office patent files or records, but otherwise reserves all
copyright rights whatsoever.

FIG. **1** is a perspective view of a power strip, in accordance
with the present invention.

FIG. **2** is a plan view of a power strip, in accordance with the
present invention.

FIG. **3** is an underside view of a power strip, in accordance
with the present invention.

FIG. **4** is a side view of a power strip, in accordance with the
present invention.

FIG. **5** is a corresponding side view of a power strip, in
accordance with the present invention.

FIG. **6** is a rear view of a power strip, in accordance with the
present invention; and,

FIG. **7** is a frontal view of a power strip, in accordance with
the present invention.

**1 Claim, 2 Drawing Sheets**





FIG. 1



FIG. 2



FIG. 3



FIG. 4



FIG. 5



FIG. 6



FIG. 7

08CV4951
JUDGE GUZMAN
MAGISTRATE JUDGE MASON
EDA

**Int. Cl.: 9**

**Prior U.S. Cls.: 21, 23, 26, 36, and 38**

**Reg. No. 2,647,550**

# United States Patent and Trademark Office

**Registered Nov. 5, 2002**

## TRADEMARK
### SUPPLEMENTAL REGISTER

## POWERBAR

MONSTER CABLE PRODUCTS, INC. (CALIFOR-
NIA CORPORATION)
455 VALLEY DRIVE
BRISBANE, CA 94005

   FOR: MULTIPLE OUTLET ELECTRICAL POWER
STRIP, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 10-5-2001; IN COMMERCE 10-5-2001.

   SER. NO. 76-333,039, FILED P.R. 10-31-2001; AM.
S.R. 7-30-2002.

TRACY CROSS, EXAMINING ATTORNEY

08CV4951
JUDGE GUZMAN
MAGISTRATE JUDGE MASON
EDA

03-24-2004

| Form PTO-1595 (Rev. 10/02) OMB No. 0651-0027 (exp. 6/30/2005) | U.S. DEPARTMENT OF COMMERCE U.S. Patent and Trademark Office |

102703341

Tab settings ⇒ ⇒ ⇒

**To the Honorable Commissioner of Patents and Trademarks: Please record the attached original documents or copy thereof.**

| 1. Name of conveying party(ies): 3-22-04 | 2. Name and address of receiving party(ies) |
|---|---|
| Monster Cable Products, Inc. 455 Valley Drive Brisbane, CA 94005 | Name: Monster, LLC Internal Address: _____ |

Additional name(s) of conveying party(ies) attached? ☐ Yes ✓ No

**3. Nature of conveyance:**

✓ Assignment     ☐ Merger

☐ Security Agreement     ☐ Change of Name

☐ Other _____

Execution Date: 03/04/2004

Street Address: 7251 Lake Mead Blvd. West
3rd Floor

City: Las Vegas    State: NV    Zip: 89128

Additional name(s) & address(es) attached? ☐ Yes ✓ No

**4. Application number(s) or patent number(s):**

If this document is being filed together with a new application, the execution date of the application is: _____

A. Patent Application No.(s) _____

B. Patent No.(s) _____

Additional numbers attached? ✓ Yes ☐ No

| 5. Name and address of party to whom correspondence concerning document should be mailed: | 6. Total number of applications and patents involved: 22 |
|---|---|
| Name: Evelyn A. Martin Internal Address: LaRiviere Grubman & Payne, LLP | 7. Total fee (37 CFR 3.41)............$ 880.00 ✓ Enclosed ☐ Authorized to be charged to deposit account |
| Street Address: 19 Upper Ragsdale Drive Suite 200 City: Monterey    State: CA    Zip: 93942 | 8. Deposit account number: |

**DO NOT USE THIS SPACE**

**9. Signature.**

| Evelyn A. Martin | _Evelyn A. Martin_ | March 17, 2004 |
|---|---|---|
| Name of Person Signing | Signature | Date |

Total number of pages including cover sheet, attachments, and documents: 4

Mail documents to be recorded with required cover sheet information to:
Commissioner of Patents & Trademarks, Box Assignments
Washington, D.C. 20231

03/23/2004 ECOOPER  00000068 08422442
01 FC:8021          880.00 DP

**PATENT
REEL: 015119 FRAME: 0272**

Attachment to Form PTO-1595

4. Application & Patent numbers

| Docket No. | Appl. No. | File Date | Patent No. | Reg. Date | Title |
|---|---|---|---|---|---|
| P924 | 08/422,442 | 4/14/1995 | 5,589,718 | 12/31/1996 | Power Line Conditioner |
| P816 | 09/054,738 | 4/3/1998 | 6,473,510 | 10/29/2002 | AC Power Source Filter For Audio Video Electrical Load |
| P1201 | 29/130,061 | 9/26/2000 | D443,249 | 6/5/2001 | Hooded Power Center |
| P1202 | 29/130,114 | 9/26/2000 | D443,250 | 6/5/2001 | Color Coded Power Center Having Peripheral-Specific Indicia |
| P1203 | 29/130,113 | 9/26/2000 | D444,450 | 7/3/2001 | Two Outlet Power Center with Phone/Fax/Modem Connections |
| P1206 | 09/675,107 | 9/28/2000 | 6,315,604 | 11/13/2001 | Power Center Assembly Having Electrical Connection-Protection and Optional Detachable Surface Mount |
| P1249 | 29/135,106 | 1/4/2001 | D446,503 | 8/14/2001 | Power Strip |
| P1250 | 29/135,105 | 1/4/2001 | D446,189 | 8/7/2001 | Power Strip |
| P1251 | 09/755,946 | 1/5/2001 | 6,456,091 | 9/24/2002 | Power Line Conditioner with Voltage and Current Amplitude Tracking |
| P1255 | 29/135,227 | 1/5/2001 | D447,119 | 8/28/2001 | Color Coded Power Center |
| P1256 | 29/135,229 | 1/5/2001 | D447,118 | 8/28/2001 | Molded Plug |
| P1258 | 29/135,120 | 1/5/2001 | D465,456 | 11/12/2002 | Pro Power Center |
| P1260 | 29/135,115 | 1/5/2001 | D446,504 | 8/14/2001 | Powerline Conditioner |
| P1357 | 09/922,302 | 8/3/2001 | 6,589,073 | 7/8/2003 | Power Center Assembly Having Electrical Connection-Protection and Optional Detachable Surface Mount |
| P1396 | 10/046,062 | 1/11/2002 | | | Tri-Mode Over Voltage Protection & Disconnect Circuit Apparatus & Method |
| P1441 | 29/163,011 | 6/24/2002 | D468,262 | 1/7/2003 | Pro Power Center (Rectangular Display) |
| P1442 | 29/163,010 | 6/24/2002 | D467,227 | 12/17/2002 | Pro Power Center (Oval Display Rack Mount) |
| P1443 | 29/163,002 | 6/24/2002 | D468,689 | 1/14/2003 | Tall Pro Power Center (Oval Display Table Mount) |
| P1445 | 29/163,012 | 6/24/2002 | D468,263 | 1/7/2003 | Pro Power Center (Oval Display Table Mount) |
| P1362 | 09/946,774 | 9/4/2001 | | | Over-Voltage Protection and Disconnect Circuit Apparatus and Method |
| P1497 | 10/251,240 | 9/20/2002 | | | Electrical Over/Under Voltage Automatic Disconnect Apparatus and Method |
| P1444 | 29/162,997 | 6/24/2002 | D467,226 | 12/17/2002 | Pro Power Center (No Display) |

## ASSIGNMENT AGREEMENT

FOR good and valuable consideration, receipt of which is hereby acknowledged, Monster Cable Products, Inc., hereinafter ASSIGNOR, does hereby sell, assign and transfer unto Monster, LLC, a Nevada corporation, doing business at 7251 Lake Mead Blvd. West, 3rd Floor, Las Vegas, Nevada 89128 USA, hereinafter ASSIGNEE, its successors and assignees, the entire title, interest and right, to the United States patents and patent applications listed on Exhibit A attached hereto and incorporated by reference, effective as of December 31, 2003.

ASSIGNOR covenants that no assignment, grant, mortgage, license, or other agreement affecting the rights and property herein conveyed has been made to others by ASSIGNOR, and that full right to convey the same as herein expressed is possessed by ASSIGNOR.

This agreement constitutes the entire agreement of the parties and supersedes and cancels any and all prior and/or contemporaneous utterances, statements, representation, understandings and/or agreements whether oral and/or written in connection with this agreement.

IN WITNESS WHEREOF, ASSIGNOR agrees to the above-mentioned terms and conditions as evidenced by the signature below:

MONSTER CABLE PRODUCTS, INC.

*March 4, 2004*
Date

By: _____

Irene Baran
Chief Operating Officer, Vice President and
General Manager

STATE OF CALIFORNIA            )
                               )
COUNTY OF SAN MATEO            )

On *March 4* _____, 2004, before me, Myrla N. Hernandez, personally appeared Irene Baran, personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

_____
Notary Public

MYRLA N. HERNANDEZ
Commission # 1320974
Notary Public - California
San Mateo County
My Comm. Expires Sep 29, 2005

**PATENT**
**REEL: 015119 FRAME: 0274**

## EXHIBIT A

| Docket No. | Appl. No. | File Date | Patent No. | Reg. Date | Title |
|---|---|---|---|---|---|
| P924 | 08/422,442 | 4/14/1995 | 5,589,718 | 12/31/1996 | Power Line Conditioner |
| P816 | 09/054,738 | 4/3/1998 | 6,473,510 | 10/29/2002 | AC Power Source Filter For Audio Video Electrical Load |
| P1201 | 29/130,061 | 9/26/2000 | D443,249 | 6/5/2001 | Hooded Power Center |
| P1202 | 29/130,114 | 9/26/2000 | D443,250 | 6/5/2001 | Color Coded Power Center Having Peripheral-Specific Indicia |
| P1203 | 29/130,113 | 9/26/2000 | D444,450 | 7/3/2001 | Two Outlet Power Center with Phone/Fax/Modem Connections |
| P1206 | 09/675,107 | 9/28/2000 | 6,315,604 | 11/13/2001 | Power Center Assembly Having Electrical Connection-Protection and Optional Detachable Surface Mount |
| P1249 | 29/135,106 | 1/4/2001 | D446,503 | 8/14/2001 | Power Strip |
| P1250 | 29/135,105 | 1/4/2001 | D446,189 | 8/7/2001 | Power Strip |
| P1251 | 09/755,946 | 1/5/2001 | 6,456,091 | 9/24/2002 | Power Line Conditioner with Voltage and Current Amplitude Tracking |
| P1255 | 29/135,227 | 1/5/2001 | D447,119 | 8/28/2001 | Color Coded Power Center |
| P1256 | 29/135,229 | 1/5/2001 | D447,118 | 8/28/2001 | Molded Plug |
| P1258 | 29/135,120 | 1/5/2001 | D465,456 | 11/12/2002 | Pro Power Center |
| P1260 | 29/135,115 | 1/5/2001 | D446,504 | 8/14/2001 | Powerline Conditioner |
| P1357 | 09/922,302 | 8/3/2001 | 6,589,073 | 7/8/2003 | Power Center Assembly Having Electrical Connection-Protection and Optional Detachable Surface Mount |
| P1396 | 10/046,062 | 1/11/2002 | | | Tri-Mode Over Voltage Protection & Disconnect Circuit Apparatus & Method |
| P1441 | 29/163,011 | 6/24/2002 | D468,262 | 1/7/2003 | Pro Power Center (Rectangular Display) |
| P1442 | 29/163,010 | 6/24/2002 | D467,227 | 12/17/2002 | Pro Power Center (Oval Display Rack Mount) |
| P1443 | 29/163,002 | 6/24/2002 | D468,689 | 1/14/2003 | Tall Pro Power Center (Oval Display Table Mount) |
| P1445 | 29/163,012 | 6/24/2002 | D468,263 | 1/7/2003 | Pro Power Center (Oval Display Table Mount) |
| P1362 | 09/946,774 | 9/4/2001 | | | Over-Voltage Protection and Disconnect Circuit Apparatus and Method |
| P1497 | 10/251,240 | 9/20/2002 | | | Electrical Over/Under Voltage Automatic Disconnect Apparatus and Method |
| P1444 | 29/162,997 | 6/24/2002 | D467,226 | 12/17/2002 | Pro Power Center (No Display) |

**PATENT
REEL: 015119 FRAME: 0275**

3/22/04

03-24-2004

Form PTO-1594
(Rev. 10/02)
OMB No. 0651-0027 (exp. 6/30/2005)

Tab settings ⇒ ⇒ ⇒ ▼

102702726

**U.S. DEPARTMENT OF COMMERCE**
U.S. Patent and Trademark Office

To the Honorable Commissioner of Patents and Trademarks: Please record the attached original documents or copy thereof.

| 1. Name of conveying party(ies) | 2. Name and address of receiving party(ies) |
|---|---|

**1. Name of conveying party(ies)**

Monster Cable Products, Inc.
455 Valley Drive
Brisbane, California 94005

- [ ] Individual(s)
- [ ] General Partnership
- [✓] Corporation-State  California
- [ ] Other _____

- [ ] Association
- [ ] Limited Partnership

Additional name(s) of conveying party(ies) attached? [ ] Yes [✓] No

**2. Name and address of receiving party(ies)**

Name:  Monster, LLC
Internal Address: _____

Street Address: 7251 Lake Mead Blvd., 3rd Fl.
City: Las Vegas    State: NV Zip: 89128

- [ ] Individual(s) citizenship _____
- [ ] Association _____
- [ ] General Partnership _____
- [ ] Limited Partnership _____
- [✓] Corporation-State  Nevada
- [ ] Other _____

If assignee is not domiciled in the United States, a domestic representative designation is attached: [ ] Yes [ ] No
(Designations must be a separate document from assignment)
Additional name(s) & address( es) attached? [ ] Yes [ ] No

**3. Nature of conveyance:**

- [✓] Assignment
- [ ] Security Agreement
- [ ] Other _____

- [ ] Merger
- [ ] Change of Name

Execution Date: 03/04/2004

**4. Application number(s) or registration number(s):**

A. Trademark Application No.(s) 78/144,778;
78/185,765;  78/185,749;  78/185,603;
78/467,886;  76/467,885;  78/185,687

B. Trademark Registration No.(s) 2,647,550
_____

Additional numbers attached [ ] Yes [✓] No

**5. Name and address of party to whom correspondence concerning document should be mailed:**

Name: Evelyn A. Martin

Internal Address: _____

LaRiviere, Grubman & Payne, LLP

Street Address: 19 Upper Ragsdale Drive

Suite 200

City: Monterey    State: CA    Zip: 93942

**6. Total number of applications and registrations involved:** ................... [ 8 ]

**7. Total fee (37 CFR 3.41).................$ 215.00**

- [✓] Enclosed
- [ ] Authorized to be charged to deposit account

**8. Deposit account number:**

OPR/FINANCE

**DO NOT USE THIS SPACE**

**9. Signature.**

Evelyn A. Martin
Name of Person Signing

*Evelyn A Martin*
Signature

March 17, 2004
Date

Total number of pages including cover sheet, attachments, and document: [ 3 ]

Mail documents to be recorded with required cover sheet information to:
Commissioner of Patent & Trademarks, Box Assignments
Washington, D.C. 20231

03/23/2004 ECDOPER  00000069 78144778

01 FC:8521              40.00 OP
02 FC:8522             175.00 OP

**TRADEMARK**
REEL: 002933 FRAME: 0835

# ASSIGNMENT

Whereas, Monster Cable Products, Inc. ("Assignor"), a California Corporation, with offices at 455 Valley Drive, Brisbane, CA 94005, U.S.A., has adopted, used, and is using the United States trademarks listed on Exhibit A attached hereto and incorporated by reference; and

Whereas, Monster, LLC ("Assignee"), a Nevada Corporation, with offices at 7251 Lake Mead Blvd. West, 3rd Floor, Las Vegas, Nevada, 89128 U.S.A., is desirous of acquiring said trademarks, together with the associated goodwill, and said registrations therefor.

Now, therefore, for good and valuable consideration, receipt of which is hereby acknowledged, Assignor does hereby assign to Assignee all right, title, and interest in and to said trademarks, together with the associated goodwill and said registrations, effective as of December 31, 2003.

MONSTER CABLE PRODUCTS, INC.

Dated: *March 4, 2004*

By: _____
　　　　Irene Baran
　　　　Chief Operating Officer,
　　　　Vice President & General Manager

STATE OF CALIFORNIA　　　　　)
　　　　　　　　　　　　　　　　) ss.
COUNTY OF SAN MATEO　　　　)

On *March 4* _____, 2004, before me, Myrla N. Hernandez, personally appeared Irene Baran, personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

_____
Notary Public

(Notary Seal)

MYRLA N. HERNANDEZ
Commission # 1320974
Notary Public - California
San Mateo County
My Comm. Expires Sep 29, 2006

## EXHIBIT A

| Docket No. | Appln. No. | Appln. Date | Reg. No. | Reg. Date | Mark |
|---|---|---|---|---|---|
| LGT782 | 76/333,039 | 10/31/2001 | 2,647,550 | 11/5/2002 | POWERBAR |
| LGT916 | 78/144,778 | 7/17/2002 | | | DR. POWER |
| LGT919 | 78/185,765 | 11/15/2002 | | | MISC. DESIGN |
| LGT917 | 78/185,749 | 11/15/2002 | | | MISC. DESIGN |
| LGT920 | 78/185,603 | 11/15/2002 | | | PETE |
| LGT929 | 76/467,886 | 11/15/2002 | | | PETE |
| LGT930 | 76/467,885 | 11/15/2002 | | | REPETE |
| LGT918 | 78/185,687 | 11/15/2002 | | | REPETE |